# KIRKLAND & ELLIS LLP

Dale M. Cendali, P.C.
To Call Writer Directly:
+1 212 446 4846
dale.cendali@kirkland.com

601 Lexington Avenue
New York, NY 10022
United States

+1 212 446 4800

www.kirkland.com

Facsimile:
+1 212 446 4900

August 19, 2026

**CM/ECF**

Hon. Denise L. Cote
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

Re: *AnySource, Inc. v. People Center, Inc.*, No. 1:26-cv-06410-DLC

Dear Judge Cote:

Pursuant to Your Honor's Individual Practice No. 1.A., please find attached Defendant People Center, Inc.'s ("Rippling") response to Runlayer's August 18, 2026 letter.

Sincerely,

Dale M. Cendali, P.C.

Runlayer filed its Motion to Compel at 10:10 PM last night, just over 12 hours before Rippling's sur-reply was due, and two days before the PI argument, demanding three new categories of source code discovery. Two weeks ago, Runlayer asked this Court for similarly broad discovery and a later hearing date, and the Court denied that request. Dkt. 45. The Motion seeks the same relief by another route, and it too should be denied. This request can only be seen as a hail-Mary attempt to derail the PI argument and further delay Rippling's product launch.

The timeline of events is telling. Runlayer first wrote to Rippling seeking additional broad discovery in the wee hours of August 13 (12:57 AM ET), the day of Nadella's deposition. It then sent another letter seeking ***even more*** discovery on August 14. Rippling responded to both letters in detail on August 16 (5:36 PM ET). Rippling heard nothing for two days and felt the matter was resolved. Then, yesterday at 4:31 PM ET—after Runlayer filed its reply brief—Runlayer surfaced and demanded a meet and confer less than 30 minutes later. As Runlayer was well-aware, Rippling was hard at work drafting its sur-reply papers. Rippling responded at 8:10 PM ET that it could confer any time between 12:30 PM and 6:00 PM ET today, after it submitted its sur-reply). Runlayer never responded, never disclosed that it intended to move, and never conferred, choosing instead to surprise Rippling with a distracting discovery dispute mere hours before Rippling's sur-reply was due and shortly before oral argument. Such tactics are improper.

Runlayer's belated Motion also lacks merit. As the Court recognized, the full merits will be addressed in arbitration (which has already commenced), Aug. 3, 2026 Hr'g Tr. 48:3–8, and this Court permitted only two targeted categories of expedited document discovery: documents "sufficient to show" the "conception, design, and development chronology" of the "Relevant Rippling Functionality," and documents "sufficient to show" its "architecture, features, and functionality." ECF No. 45 at 2. This makes sense. This is supposed to be an injunction ***in aid of arbitration***. And when, as here, courts order ***any*** expedited discovery, they do so on a highly circumscribed basis. *See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 590 B.R. 200, 208 n.11 (Bankr. S.D.N.Y. 2018) ("courts must tailor the [expedited merits] discovery as appropriate"). The Court already considered what was appropriate here and ordered targeted discovery on that basis. Runlayer's efforts to turn this into full-blown discovery circumvents the arbitration process the parties chose to resolve any disputes relating to the Trial Agreement.

Rippling fully complied with the Court's order. It made its source code for the Relevant Rippling Functionality available for inspection and produced commit logs along with design and architecture documentation. Runlayer had ample opportunity to analyze Rippling's code, but chose not to. Runlayer's expert reviewed Rippling's code, but did not opine on ***any*** of that code in his declaration, Dkt. 78, nor did Runlayer ask Ram Nadella, whom Runlayer deposed for five hours, a *single question* about that code. As Mr. Nadella testified in detail, Rippling's produced commit logs are complete and consistent with the development timeline. Nadella Tr. at 170:2–12 ("Q. Is it your expectation that the commit history produced to us in this litigation is complete for these folders, at least? A. Yeah, from looking at this, the timing matches when we started going from doing [a proof] of concept to actually being the MVP. And the folder, the code lives in today the right folder. So to me this all suggests, to the best of my knowledge, ***this is the beginning of this.***"); 164:25–165:7 ("Q. … this commit log shows the actual changes to source code files in this folder over the relevant period, going back to April 27th, 2026, is that right? A. Yes, that's correct.").

Runlayer's demand for "omitted entries for at least March 2026 through April 27, 2026" is based on a misrepresentation of Mr. Nadella's testimony. Mr. Nadella testified that late March ***was when he began thinking about the idea, not building it***, and that coding on the proof of concept began in ***April***. Nadella Tr. 59:25–60:13; 96:19–97:9. Runlayer's assertion that Rippling began making its own MCP Gateway in March is inconsistent with his testimony. And so, consistent with this Court's Order, Rippling produced its MCP Gateway source code related to the "Relevant Rippling Functionality," and the commit logs showing the development chronology for those directories. Mr. Nadella confirmed those commit logs were "the beginning of this" and showed the "actual changes ... over the relevant period, going back to April 27, 2026." Nadella Tr. 1702:2–12; 164:25–165:7. Rippling produced materials sufficient to show the development chronology of Runlayer's own defined "Relevant Rippling Functionality." Runlayer is not entitled to more.

Nor is there anything "unexplained" about the April 27, 2026 entries that Runlayer says reflect code "imported" from "an undisclosed location." Mot. 1. As explained, Rippling produced the code for the Relevant Rippling Functionality as it exists, and the commit logs Rippling produced are consistent with Mr. Nadella's explanation of the development timeline. That development took only a few weeks, rendering Runlayer's allegation that misappropriation can be inferred from the timing of when it disclosed information and Rippling created its code entirely implausible. Nadella Tr. 104:9–16 (testifying that Rippling had a "functional minimal viable product" "within a few weeks" after they started the build in late April 2026); Dkt. 76 at 7–8. Nadella also testified that Rippling's development used "open source implementations" and "AI coding tools"; "Runlayer wasn't a factor" in that development. Nadella Tr. 55:22–56:9. Regardless, when directly asked about the purportedly "imported" code, Nadella testified that it was likely a folder renaming or an "AI-generated commit … conveying the wrong intention." Nadella Tr. 153:11–154:14; *id.* at 167:19–168:6 (testifying consistently). And it bears repeating that Runlayer never asked Mr. Nadella to open a single source code file during his deposition.

Runlayer's request for the "author (and, if different, the committer) identity for each change" appears nowhere in the Court's Order. Runlayer previously asked this Court for documents "that identify the persons involved in Rippling's competing product development," and the Court declined to order it. Dkt. 38 at 1; Dkt. 45 at 2. Regardless, Mr. Nadella identified his team members by name, their locations, and the reporting line above them (a fact Runlayer omits from this and its reply brief). Nadella Tr. 58:19–59:11; *id.* at 88:17–89:22; *id.* at 20:5–15. Moreover, Runlayer's claim that the author information was intentionally omitted (Mot. 2), is incorrect. Mr. Nadella testified that author information was not always included and varied by context. *See* Nadella Tr. 165:17–166:9 ("Q. … does the commit history that you use when you're working on a product typically include author names? A. Depends on what context you're looking at, … you can do different command line options and sometimes it's easier to just see the commit logs in the form we saw. Q. So when you're generating a commit log, you can choose whether to include author information? . . . A. Yes …."). This is another red-herring intended to distract from Runlayer's fundamental failure of proof to justify the extraordinary remedy it seeks.

Simply put, there is no need for additional discovery. Runlayer delayed in bringing its PI motion, and it should not now be permitted to claim it needs more discovery and time to make its case to the prejudice of Rippling and in disregard of the Court's prior rulings in this matter.